Very well. Go ahead. The police and the court, thank you and good morning. Dennis Prince on behalf of the LMGC Kalberer. I'd like to reserve three minutes for my rebuttal argument. Thank you. Nevada law makes unmistakably clear that American Family Owed, by reason of its fiduciary-like relationship, the obligation to protect Mr. Kalberer from emotion. This claim was presented until the moment it was concluded. And as part of that relationship, the Doctrine of Equal Consideration also governs how American Family, like any other liability insurer, must treat its policyholders. And the reason for this type of fiduciary-like relationship is because the recognized disparity in bargaining power, specialized knowledge, as well as experience of an insurer compared to its consumer, insured like Mr. Kalberer, would ever, regardless of whatever the legal standard may be, or not in Indian, regardless of jurisdiction, an insurer who puts their own interests above the insurer and rejects settlement demands in order to protect their interests and fails to give equal consideration, and as a result, it gets its judgment, acts in bad faith. The disparity in bargaining power and the adhesiveness of the relationship is really borne out in a case like this, a failure to settle case. By reason of the insuring agreement to the nature of the relationship, the insurer or American Family, at all times, number one, retains complete control of the settlement process and the negotiation process. They remain in complete control of the litigation. Mr. Prince isn't the whole question about whether or not it was fairly debatable about the range of verdict hearing. You could have somebody, you could have ten lawyers look at your case and five of them could have said, well, the verdict will be under an X, and the other five would say, well, we'll do it for an X. I mean, here's the way I've got it. She's got special damages of $1,800. $67,000. Well, in any event, it seems to me, and tell me how the record is wrong here, at one point they're saying the maximum exposure could be $600,000, but that's unlikely. They think the verdict's going to be 50 to 75. I don't know, it just seems to me that fairly debatable means they're to have used the evidence, and that's why we have a jury. The value of the case is what that jury says it was worth on that day. I just don't see in the record where these facts are, quote, fairly debatable as to what a reasonable jury could do. Tell me how I'm wrong. Fairly debatable. I can't give a doctor that. In Nevada, we have a similar legitimate dispute doctrine. Well, here's what I'm reading from a Nevada case counsel. The case I have is Albert H. Wilder's and Company v. Artis, 114, Nevada, 1249. They talk about debatability in there. They talk about a debate issue, but in terms of a defense for a bad faith claim, like fair judgment, what's really debatable, Nevada's actually adopted the two-judge dispute doctrine. That's the Allstate Miller case. And so under the two-judge dispute doctrine, it doesn't even have any application in a third-party failure to settle context. If you look at this court's decision in the Yan Fang Du v. Allstate 681 F. 3rd, 1118, this court is evaluating in the context of a failure to settle whether that is even helpable, relying in part upon the Howard v. American National case from the state of California. Nevada often looks to California in the absence of decisional law to assist them in developing some areas, including primarily the insurance laws. In this case, the Nevada Supreme Court looked at her son. Right? Right, there's an absence of decisional law with regard to this area of particular insurance law of the Allstate Miller, which is the most recent pronouncement. And when we adopted the two-judge dispute doctrine, that was the basis upon which it was... Okay, so there's a genuine dispute as to what a reasonable jury could do here. No. Nathan, let me say why. In part because the district judge never applied the two-judge dispute doctrine. First, it doesn't even apply in a third-party failure to settle case. Any first-party case where there is a coverage dispute based upon this court's analysis in Du v. Allstate as well as the Howard v. American National case, that doctrine is not even applicable in this context. If it was a first-party case and you're debating whether or not a particular exclusion may be applicable or not, that may be a more appropriate use of that doctrine. Judge Mahan, in this case, he did not apply the two-judge dispute doctrine. He didn't even discuss it as part of his order. His focus was on, quote-unquote, the reasonableness of the decision-making by American family. But, you know, inherently, the courts of any kind... My question is, sir, I want to make sure you understand what happened here. Allstate, they went $300,000. They've been here several earlier on campus to settle, which they did, but didn't happen. So we ended up with a jury project where it's $313,000 of change while in excess of the policy limits. This is filed against the insurance company, saying you disrespectfully represent us. The insurance company in town pays the entire judgment, correct? That's correct. So we're not fighting about the agreement of judgment. We're fighting about something else. What are we fighting about? The attorney's fee is here. There are issues here. Who brought this? Basically, he forced them to make the payment. They didn't do it. I don't understand why. They thought they might lose the lawsuit, so they paid it out. But how much money are we still fighting about? We are now talking about, Your Honor, the court remedies for breaching the duty of good faith and fair dealing. He stressed the anxiety, the worry of Mr. Calvert, who's had more than three-plus years that he was involved in litigation. As you know, the view that's been established in the record, he sent no less than seven times communication to the counsel selected by the American family, expressing his worry, concern, and fear over an excess judgment because he couldn't make financial decisions for himself and for his family business, which he was a farmer in South Dakota, although he was living in Nevada at the time of the crash, because of fear of the outcome of this lawsuit. And it's that, what we're talking about, the Campbell v. Hank Farmkins, which is one of the several cases in the country with regarding to a failure to settle case where the insurer eventually does pay the excess judgment. All that makes sense. So I think contractual claim, it does not sanitize their bad faith because we were evaluating the conduct of the insurer at the time they made the decisions in forcing an insurer to go through litigation for more than three years to suffer that stress, anxiety, and worry. So this is a bad faith case. It is. And so we're looking at this as a tort remedy, so there's no... I'm trying to see this to be a stronger case in terms of contractual obligations. But I'm starting to see that as a theory. The insurer's going to be clearly miscalculated. I get that. They made a bad case. I mean, I think Campbell would have a spot in that. I mean, they made a bad case. I get that. But I have trouble seeing that today. And here's the... I think if they focus the attention on the conduct of the insurer in order to give equal consideration to the insurer's interests. For example, from the beginning, the medical evidence establishes in the record that the claimant, Mendiola, has over $67,000 in medical expenses with a $100,000 policy, a recommendation for a future surgery, a neck infusion surgery, which, obviously, if you put those together, the liability was clear against Mr. Calvert. The potential liability was well in excess of the policy limits. And there was a palpable indifference, if you look at this record, about American family. Even giving the consideration, Mr. Calvert is pleased and repeated pleased to settle this case. And I think what's important, Your Honors, American family's position never changed throughout the course of the proceedings. They never offered more than $76,000. They never offered any other policy limits. As the defense counsel, the warning signs are even getting bigger and bigger as we're getting closer to trial, American family stays stuck in its position, dragging this insurer through a trial, these fear of an excess judgment, what impact is this going to have on me and my financial future? Is it going to be a ruinous judgment? The insurer's government does not have the right to do that as part of the duty of good faith and fair dealing. And the only real explanation that you can see is American family wanted to save money for itself off of the policy. If you look at the verdict was 3 1⁄2 times the policy limits and the ultimate judgment based on the interest, fees, and the cost, which there's always going to be an additional amount, oh, but above and beyond just the verdict amount, was 5 times the policy limits. So it's not like we're talking about they were reasonably close. There's been some suggestion or argument. Did the insurance company pay that $12,000 out there to pay for their insurance policy? They did pay it after we filed this bad faith lawsuit. And what's interesting is, Your Honor, that does not sanitize their conduct. In one of the statements made by the in-house counsel who is monitoring the litigation for American family, Mr. Greenberg, his suggestion was, let's pay the policy limit so that we can eliminate any bad faith case. Well, that does not eliminate a bad faith case. And your comments were very appropriate where the best way to describe this case is American family absolutely lost. We're only clearly talking $24,000 at one point. Between the $36,000 they ultimately offered and their $100,000 policy limit, during the litigation, the claimant, Mendiola, served an offer of $299,000. So they again, within the policy limit, even with the defense counsel's warning that there could be a potential excess verdict of $350,000 or more, Well, he actually was. But the offer to settle the policy limit became a barrier for a little while. And the warning in terms of how high the judgment might go was much later after the case progressed to a large incident. Are there mistakes in the sequence? The sequence was February 10th, 2003, morning of the 8th, 2010. The initial super report from the defense counsel informed a very compelling among other things that there could be a verdict of $350,000. Now, the view, the claimant could come in less, but he could rule out a verdict of $350,000 or more. The offer was dragged out of the key yet on March 25th, 2010. That was the sequencing of the incident. Over time, as we're getting closer to trial, now the warnings are becoming increasingly greater. I want to leave with the preserve my time, so I'm going to use an extra moment here. Nevada, the substance of law, has determined that whether an insurer breaches the duty of good faith and fair dealing is really inherently based upon reasonableness. That's the crux of the bad faith claim. American Family, LeMastro, Allstate, Miller, and United Fire v. McClellan all have said that whether an insurer breaches the duty of good faith and fair dealing is a question of fact. And while we don't have any enunciated standard for a killer to settle a case, the Allstate-Miller case does talk about the one adopted in California and then the Artsdale case, which is one, does the insurer give equal consideration to the insurer's interests? And two, would a reasonably proven insurer pay the policy limit without regard to the policy limit? All of those questions depend upon the reasonableness, number one, of the conduct of the insurer, as well as the awareness of the potential risks involved and how they consider the inherent risk to the policyholder as part of the overall decision-making process. And for those reasons, we believe there's questions of fact that still remain for our trial. And we're asking this Court to bring back the case back to the Nevada District Court for further proceedings. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Michael Wald. I represent American Family Insurance Company and the American Family thanks you for taking, giving us this opportunity to address these issues. I'd like to start by counseling and suggesting that every communication that came from Defense Counsel Houston was a warning that this case was going to settle for $350,000 or later for clear amounts. That's not really a fair representation of what those documents said. That's taking a line out of a document which was produced and taking it completely out of the context of the document and suggesting because it was said there's a possibility that there could be a verdict. If these things are true, it was always in there. If these things are true, there's a possibility of a verdict that would be higher than the amount of the policy. But if you read those documents in their totality, the documents state it doesn't appear that these things are true. And we didn't have the documentation that we needed. So when the first 15-day demand was made, the medical records that we had, 55,000 of the 66,000 came from the spine, the pneumatic spine, including the clavicle. The medical records that we had seemed to indicate that all or at least a major part of what injuries were being claimed predated the accident. There was good reason to believe that it was We didn't know what the reason was. When American family asked for the medical records, they didn't get medical records. So they got them to the law school. Seven months later, which seems maybe some time, but the case was still in its infancy. In March, we got the $99,000 offer. And at that point in time, we still hadn't had an opportunity to have an expert review the medical records. We still hadn't gotten the medical records. In fact, back in February morning, the counsel referred to specifically said, based on the records we have, it appears that everything is three days this time. And it also said we need to get an expert. We need to get the other medical records to find out whether or not these things are true and if the claims are true, there's that possibility. What's going on here is exactly what counsel said. They want to get to our bad faith damages. They want to set up insurance company. That's exactly what is happening in both cases in our county. In order to try to get, in addition to the damages that may or may not have flowed from the accident, from the injury, they want to get those bad faith damages. And after that date, that date in March, there's bills that get tied up. Here's what I have. Is the standard in Nevada from the briefs? Act on bad faith requires that you act unreasonably with knowledge that there's no reasonable basis for your conduct. Is that the correct standard? That is the only standard that we have from Nevada. And candidly, that applied to the duty to defend and the duty to identify. And there's been a lot of argument about the standards in this case. And certainly, the Nevada Supreme Court has not directly spoken to the standard, which I'll hold on to in itself. But there were basically other considerations that would have to go into that. Well, I have throughout this that you are constantly, and maybe I'm correct, you're constantly reevaluating the claim as to what the best case and worst case scenario was. I assume that's part of your claims process. That's what defense acts were saying. And apparently, your consulate, the underlying trial, miscalculated because you had a medical expert ready to testify at the trial. You didn't put that expert on because you thought the plaintiff had done so poorly as a witness. Did I get that file right? I'm not exactly certain why defense acts didn't put the expert on. One of the reasons is because the plaintiffs hadn't put an expert on. And so they made a determination at that point where the trial involvement had dragged on. And it was the jury. My understanding is they made a tactical decision not to put that expert on because they didn't have expert testimony to the contrary. That may have been a tactical decision, which with, you know, Monday morning quarterbacking, we'd all like to have that and do differently. But the point of the matter is this bad faith claim is dependent upon the decision that was made by the American family in March. The case was in attendance here because after that, the plaintiffs considered the policy to be open. They would not sell for any amount. When we made our offer for $76,000, we were told directly we will not sell for $76,000 or for the policy or for any amount because that's the way that they could if the policy was open. I understand that when... Okay. Plaintiffs' lawyers use that phrase the policy is open is if you've had an opportunity to settle for the policy and you don't take it, after that, there is no moment to the policy because you've had a chance to settle and we are going to be the way you land. If we get a verdict that is higher than the policy, you're going to have to pay that because you've had an opportunity to sell within the policy. So they're judging that we look for a better contract which we do and do ensure have lost the ability to assist their promise and that's what they mean when they say the policy is open. That's what they think. That's what they mean when they say that. So they're unwilling to negotiate. There was no possibility after that March date to negotiate the amount to sell within the policy and on that date, the American family simply did not act in that faith. We've argued a lot about what the standards are and I admit that the insurance company that has a good option, this is a senior, but I can't imagine that the Nevada Supreme Court when they get to this issue before they're put on the DOPA standard that the insurance company has to consider the issue so they ensure that it is equal to their own interest. What is missing in this case is any evidence of any coming anywhere that they didn't do that and every step along the way they don't want you to see how some of the consideration was given to the communications from the insurer regarding his views on the B&A lawsuit and the fact that he might be responsible for any damages outside the policy limits. How is that taken into consideration? That's a very difficult issue for insurance companies to deal with because they have to take into consideration all of the risks involved but there has to be some basis on which they can still exercise that bargaining right to be able to take this to trial if they feel like the amount that's being demanded is too much. The consideration that is given is that at the end of the day when they lost before there was a judgment, they paid not only the amount even though the defenses they had because there were significant liability issues in this case that they could have taken on appeal and they also had the argument in Nevada that they were not they had not acted in bad faith so therefore they were only responsible over to the policy limit which was $100,000. They didn't take that position. Instead they paid the full amount. They didn't pay that full amount but when you're held you did that only after having been sued. The lawsuit which was three weeks before they filed was filed after 30 when there was a judgment. The American family may have considered the fact that they knew that this lawsuit was coming but the filing date of the lawsuit made no difference. They may have considered the fact that they wanted to act in good faith because they didn't want to be sued for bad faith. They didn't want to pay that amount because the whole bad faith lawsuit was filed. They knew that bad faith lawsuit was coming long before the underlying case ever went to a jury. Here's what I got. I got the verdict this October 4th, 1933 338-477 10-18 two weeks later they filed a bad faith case. That's correct. Then in January you paid $500,000. That's correct. Before a judgment was issued before a judgment was issued. Why did you pay $500,000 on a verdict of 338? That's correct. The attorney's fees, the costs together, the cost of that amount, that we considered that they might be able to get and so that was the amount that we settled for in order to pay everything and have no judgment in your case. When you're legally obligated to pay under your transcript would the named defendant now apply to hear the verdict? I still don't see why you paid $160,000 more than the verdict. Because they analyzed it they considered how much it would cost to take it on to an appeal and considered the interest of the insured in having a judgment where an action would be entered against the insured. They continued negotiating with the insured and an attorney's fees involved and they negotiated that amount so that they could actually complete good faith but it didn't matter how good faith they changed it. They still lost it. It's already there. I'm not sure this is let me restore it just a minute. So the amount in excess of the $338,000 will change. It includes attorney's fees. Who's the attorney's fees? The secret inverse. I wasn't there to negotiate this. It's the attorney's thing. Did I go to the insured first? I don't know. I don't know how they came up with that number exactly. The main thing is when it doesn't work, they paid more than the verdict in order to make sure that they were the funder. But I understand the $500,000 generally goes to the insured. Correct? I I don't know the answer to that. I simply don't know. It's my understanding that it went to the insured party. The insured party had to do it. They actually came to the room and the one who's bringing it in was the attorney's fees and costs. I wouldn't use the argument that they came from a verdict that offers a judge number of judgment or pay and maybe the office of judgment some attorney's fees and costs would have been afforded in Nevada as an equivalent of an attorney's fees and aid. That's correct. It would have been under both. Our rule of 60, which is the equivalent of the federal rule of 60. So they did that and they paid the additional amount in order to end that litigation entirely. It wasn't to end this litigation. However, it is true that when the appeals court commented that if we pay the verdict amount it's going to have an effect. It should have an effect. It should. I'm not suggesting that if you pay the amount after the fact it's a bad thing. What I'm suggesting is it doesn't really matter what the standard is in Nevada. If you look at the record it's under any standard, even under that slightest evidence standard. You can't do that. If you look at your standard of California I think the Nevada Supreme Court will adopt some version of that. There will be elements of bad faith. You can't find those elements of bad faith in this case. You have two opportunities for an American family to accept policy and at both times it was not a bad faith decision on their part. They were not elevating their interest of the interest of the insured by doing that. Counsel has focused great attention and reply rate on the issue of in summary judgment it's a factual issue. You've gone to a jury and asked whether or not it was bad faith. The jury took these facts. There are no factual issues in this case. The facts were known. The dates were known. The documents were there. The question of whether or not it was bad faith, that's a legal question and even if there were a factual issue for the jury to decide with all of the evidence that is before the district court and I'm not talking about I'm not trying to make it a factual argument. What I suggested was that counsel just bring these large legal stacks in a fair way looking at the record and all the facts that are set forth, the district court was acting properly within its gatekeeping role to say these facts don't show that faith. All you're saying is the quantum of evidence that was submitted doesn't meet the standards to make a submissible case under bad faith. Is that what you're claiming? Most people just send that one here. So I want to know about issues two and three that we've got that the appellant unfair insurance practice claims. Apparently there's a correct action you can use on unfair insurance practice to make an extra statute to bring a claim. And then there's a 56D issue as well that the district court did not do that sufficient discovery. So tell me about both of those issues. On the statutory claim for unfair practices the only one that could possibly apply the only thing they said is that we didn't settle and if we didn't settle that violates that statute as well and it doesn't even come close to violating this statute because it's failing to effectuate proper, fair, and equitable settlements of claims in which liability is ensured. That's exactly a liability of insurance. I'm sure they're not a good reason, but it's one they had an opportunity to see on this discovery. The district court made a mistake the first two rounds of the discovery. It was close, but it granted reconsideration to get reconsidered and instead even if the discovery you requested was found it would not demonstrate any bad faith. So what mistake was made? What was the proposed discovery that it wasn't that the plaintiff was not permitted to tell you? He wanted to get an explanation. He wanted to apply it on bad faith. He wanted to do some other depositions. All of those matters the district court considered said even if they probably said they would agree that we're going to change the analysis in this case. Actually, Mr. Ball, did one of you think about certifying this question? Can you have had a Supreme Court standard as determined in Nevada? Um, that would be a waste of time because I didn't enter any standard judgment on bad faith. The grant of separate judgment was done almost three and a half months before the clause of discovery. To answer Justice Ball's question, there was never any depositions taken because the court granted summary judgment before those were taken. We were in the middle of, there were some discovery motions that were pending and there were some orders compelling the American family to produce some documents which included some portion of the personnel file of the key witnesses involved or the decision-making witnesses involved in the American family. So what they considered, what they found relevant, what they found important, how they gave people consideration. I was never given an opportunity to conduct because, so, with regard to the clean-standing expert, that was critical because there's a component of the analysis that we believe that a reasonable and prudent insurer would have not have gone to trial. They would have accepted the policies. We needed, and we believe, we needed expert testimony on this. Mr. French, have you tried these cases to furnish some coercion for close expert, a lawyer, or a crimes adjuster? It was Scott Glowback who was a lawyer. He's pretty rarely represented insurers his entire career. So he would have been a lawyer, which, on an adult case, that's an appropriate expert in the state of Nevada. He did counsel accurately, classified what Judge Mayhem did here. He said, well, there wasn't enough evidence to even get a submissible case. There was trouble, you know, being an expert. Is that what he said? He did essentially in short say that with regard to the verdict, and I want to talk about that for a moment, the $338,000, the plaintiff would have been entitled to interest on that pre-judgment interest as allowed by statute, clause as allowed by statute, the prevailing party, and potentially fees under Rule 68 Analysis, which is the Offer of Judgment Rule, the settlement of $500,000 was paid directly to the claimant, that's S.E.R. D-42 of the American Families Record Credit to identify those facts to you that no monies were paid to Mr. Calabar for his fees or anything else. It was my confusion at that point. I finally understood it. Right, I mean, there's always going to be some amount above the verdict amount. So, Rule 68, I just didn't listen to him. With respect to the timing of the filing of the bad faith lawsuit, was Mr. Calabar supposed to sit back and wait at no point before this verdict, even though he was asking for an American family ever before that trial started or ever before the verdict was entered, assuring him that no matter what, we will pay this, we will satisfy this. In fact, they told him they do not provide that type of assurance. So once the verdict was leveled against Mr. Calabar, he had no other reasonable mechanism available to him other than to initiate an action, and there's no timing of when an action needs to be filed. But in this particular case, the fact that no payment was made or assurance was made before the filing of a bad faith lawsuit, the amount of the verdict itself, I believe, is significant evidence. There's at least a portion of fact that there's a differing opinion or inference that you can accept from these facts to support that there did result in your effect to go to trial. The clock is doing something strange here. Well, on the other hand, on the Sierra Leone ... ... ... ... ... ... ... ...
judges: W. Fletcher, Rawlinson, Pratt